**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
INTERSTATE OUTDOOR            :
ADVERTISING                   :
                              :
    Plaintiff,            :     Hon. Joseph H. Rodriguez
                              :
  v.                          :     Civil Action No. 08-3753
                              :
ZONING BOARD OF THE TOWNSHIP  :
OF CHERRY HILL AND THE        :     **ORDER & OPINION**
TOWNSHIP OF CHERRY HILL,      :
                              :
    Defendants.           :
_____

*Attorney for Plaintiff:*
Reginald Jenkins , Jr.
Louis L. D'Arminio (argued by)
Price, Meese, Shulman, & D'Arminio, P.C.
Mack-Cali Corporate Center
50 Tice Boulevard
Woodcliff Lake, NJ 07677

*Attorney for Defendants:*
Sharon Handrock Moore
Gebhardt & Kiefer, P.C.
1318 Route 31
Po Box 4001
Clinton, NJ 08809

    **RODRIGUEZ**, Senior District Judge:

    Before the court is Defendants' motion for partial summary judgment seeking dismissal of Plaintiff's claim that Cherry Hill's Zoning Ordinance prohibiting the erection of outdoor advertising displays is unconstitutional on First Amendment grounds. However, before the court will evaluate the merits of that motion, it agrees that the record requires further development. Plaintiff's request for additional discovery

1

pursuant to Federal Rule of Civil Procedure 56(f) is granted.  Accordingly, the motion for partial summary judgment [Doc. No. 11] is administratively terminated pending the completion of additional discovery.

## I. Background[1]

Interstate Outdoor Advertising ("Plaintiff" or "Interstate") is a Cherry Hill based company engaged in the business of erecting and leasing outdoor advertising structures in a variety of markets, including Cherry Hill, New Jersey.  Interstate's billboards are made available for both commercial and non-commercial purposes.  (Gerber Aff. at 3: ¶ 4.)  In 2008, the Defendant Township adopted Ordinance 2008-6 to ban offsite advertising signs such as those erected and leased by Interstate.  The Zoning ordinance provides an extensive list of purposes in support of the terms of the ban; however, the primary justifications for the ban are the promotion of traffic safety and aesthetic improvement.  As amended, the Zoning Ordinance provides:

> Section 511. <u>PROHIBITED STRUCTURES AND USES</u>.  The below listed structures and uses are prohibited in any zone. . . .
>     5. Billboards and Off-site signs.
> All uses not specifically permitted in this Ordinance are hereby prohibited. . . .

(Moore Aff., Ex. E)

In 2007 before Cherry Hill amended the zoning code, Interstate filed three applications to the Township Board of Adjustment proposing to erect four outdoor advertising signs in the Township's Restricted Industrial Zones along U.S. Interstate-295 (a major transportation corridor with three lanes of traffic in each direction).

---

[1] Only the facts germane to the Plaintiff's request for a continuance pursuant to Rule 56 (f) are included in this opinion.

(Jenkins Aff. at 17, Ex. E & F.)  After a public hearing on each application, the Zoning Board denied Interstate's requests. (Moore Aff., Ex.s F, G, and H "Board Resolution Regarding Variance Application.")

Plaintiff challenges those denials and alleges that the Ordinance constitutes an impermissible restriction on the freedom of speech in violation of the First Amendment. In response to Defendants' motion seeking dismissal of that claim Plaintiff's primary argument is that the defendants have not shown that there is a connection between a complete ban of offsite advertising throughout Cherry Hill and the promotion of traffic safety and aesthetics.  Plaintiff argues that its First Amendment claim should proceed because summary judgment would be premature in light of the undeveloped record in this case.  Accordingly, Plaintiff states that it is entitled to additional discovery as permitted under Rule 56 (f).

## II.  Rule 56(f)

Rule 56 (f) provides that a nonmoving party may move for a continuance pending further discovery on the premise that discovery from Defendant could aid its response to the summary judgment motion.   By its very nature, the summary judgment process presupposes the existence of an adequate record; therefore, the Supreme Court has explained that "[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt with under Rule 56(f)." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).  Rule 56(f) states:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:(1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

3

Fed. R. Civ. P. 56 (f).

Although "District courts usually grant properly filed Rule 56(f) motions as a matter of course," St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1314 (3rd Cir. 1994) (quotation marks and citations omitted), the party requesting a continuance must first demonstrate how that discovery will create a genuine issue of material fact. The Third Circuit has interpreted Rule 56(f) as "imposing a requirement that a party seeking further discovery in response to a summary judgment motion must submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Dowling v. City of Philadelphia, 855 F.2d 136, 139-40 (3d Cir. 1988). Because the court has discretion in acting on Rule 56 (f) motions, this list of factors is not exhaustive. "Instead, it simply offer[s] a guide for the district court to follow in exercising its discretion under Rule 56(f)." Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 458 (3d Cir.2003) (internal quotations and citations omitted). Regardless of the Court's determination, "[i]t is 'improper' for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion." Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir.2007) (citation omitted).

Here, in support of its Rule 56 (f) argument, Plaintiff submits the affidavit of Reginald Jenkins, counsel for Interstate, which contains a description of the documents and information Interstate requires to oppose the motion for partial summary judgment.[2] Plaintiff outlines a number of topics on which it wishes to take discovery,

---

[2] Plaintiff's interrogatories and demand for production of documents served March 16, 2009 have gone unanswered. Defendants filed their motion for partial summary judgment on March 27, 2009; therefore, parties did not exchange responses to pending discovery requests.

namely evidence that Defendants relied upon with respect to the conclusions that billboards have adverse impacts on traffic safety and aesthetics warranting a complete ban of those offsite advertisements in the Township. (Jenkins Aff., Ex. B at 7-8.) The court agrees that additional time to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken is merited for the following reasons.

### III.  Analysis

Billboards instigate communicative and noncommunicative controversy. However, it has been recognized that "the government has legitimate interests in controlling the noncommunicative aspects of the medium . . ." Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 502 (1981). But because the regulation of the noncommunicative aspects of a medium often impinges on the communicative aspects, it is necessary for the court to reconcile the government's regulatory interests with the individual's right to expression. Id. "Performance of this task requires a particularized inquiry," Id. at 503, and in light of the imposition upon a fundamental right, the court may not escape the task of ensuring that "a sufficient basis" exists for Defendants' assertion that billboards are traffic hazards and compromise the aesthetic of the community. Id. at 508.

The court's inquiry requires application of a four-part test under which the constitutionality of ordinances restricting or prohibiting commercial speech are analyzed. Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 562 (1980). Under this test, a court must first determine whether the communication concerns lawful activity and is not misleading. Second, in order for the restriction to withstands constitutional review, the State must assert a substantial interest will be

5

achieved by restricting commercial speech. If both inquiries yield positive answers, the court must determine whether the restriction directly advances the state's asserted interest and must ensure that the restriction is not more extensive than is necessary to serve that interest. Id. at 566. These last two elements of the Central Hudson analysis involve consideration of the "fit" between the legislative ends and the means chosen to accomplish those ends. Rubin v. Coors Brewing Co., 514 U.S. 476 (1995). The parties here do not dispute that the speech is lawful and agree that the Township's interests in traffic safety and aesthetics constitute substantial interests. However, Plaintiff argues that the Township cannot show that the Zoning Ordinance directly advances the Township's asserted interests in traffic safety and aesthetics or that the Zoning Ordinance is not more extensive than is necessary to serve those interests.

      A regulation "may not be sustained if it provides only ineffective or remote support for the government's purpose." Central Hudson, 447 U.S. at 564. Moreover, regulations which "indirectly advance" a state interest should be struck. Id. Hence, a court must carefully consider whether the general application of the statute directly advances the government's interests.

      Supreme Court precedent reveals a willingness by the Court to accord broad deference to legislative judgment of what constitutes regulations that directly advance substantial governmental interests. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 509-10 (1981). However, the deference accorded to lawmakers there, was extended because there was "a *sufficient basis* for believing that billboards are traffic hazards and are unattractive." Id. at 208 (emphasis added). Furthermore, the Metromedia Court relied on legislative judgment in the absence of any evidence contradicting those

6

judgments.  Id. at 508 ("There is nothing here to suggest that these judgments are unreasonable.")

The court agrees that Metromedia deference is warranted only when the municipality provides the court with a rationalization supported by relevant evidence for the infringement upon the fundamental rights of citizens.  See Metro Lights, L.L.C. v. City of Los Angeles, 551 F.3d 898, 914 n.13 (9th Cir. 2009) ("As long as the City can show with plausibility sufficient to merit the deference of Metromedia that the Sign Ordinance . . . advances the City's interests and is narrowly tailored, then the City's policy survives First Amendment scrutiny.")  Other courts have also demanded the production of evidence, such as studies, empirical data or professional literature to substantiate the connection between the government interest and the regulation at issue.  See Burkow v. City of Los Angeles, 119 F.Supp.2d 1076, 1080 (C.D.Cal. 2000) (citing Edenfield v. Fane, 507 U.S. 761, 770-71 (1993)).  ("Although the Court finds that Defendant has proffered at least two substantial governmental interests - safety and aesthetics - . . . the Court is unwilling to accept similar speculation or conjecture on how this ordinance directly advances the governmental interest asserted.)  In Burkow the District Court reviewed a law which prohibited citizens from displaying a "For Sale" sign on/in a vehicle.  The court stated,

> [T]he City has presented no studies or even anecdotal evidence, and [n]ot even [Plaintiff]'s own conduct suggests that [Defendant]'s concerns are justified. Instead of demonstrating how the harms it recites are real and that its restriction will in fact alleviate them," Defendant employs circular reasoning to suggest that the mere act of passing the ordinance is evidence that there were "serious" problems.  This is inadequate."

Burkow, 119 F.Supp at 1080-81.  Without substantive evidence these courts struck

down the municipalities' regulations under the Central Hudson test.

Significantly, the New Jersey Supreme Court also concluded that the government must show a legitimate interest that is to be served by an ordinance and demonstrate a reasonable factual basis indicating that the regulation advances the governmental interest. Bell v. Twp. of Stafford. 110 N.J.384, 395, 541 A.2d 692 (1988). In Bell, the New Jersey Court was called upon to evaluate the validity of an ordinance almost identical to the regulation at issue here, as the ordinance in Bell also prohibited all billboards used for off-premises advertising within any zoning district of the Township. Id. at 388. The court stated that:

> The record is almost completely devoid of any evidence concerning what interests . . . are served by the ordinance and the extent to which the ordinance has advanced those interests. Because the exercise of first amendment rights and freedom of speech are at stake, the municipality cannot seek refuge in a presumption of validity. It clearly had the burden to present and confirm those compelling legitimate governmental interests and a reasonable factual basis for its regulatory scheme in order to validate its legislative action. Its failure to do so is fatal.

Id. at 396.

Just as the Court in Metromedia did not wish to disturb the reasoning and conclusions drawn by the California Supreme Court, this court also agrees with the analysis conducted by the New Jersey Supreme Court. It appears that the absence of a factual basis is a legitimate concern.

Here, the Township has failed to come forward with the evidence upon which it relied when concluding that traffic safety is compromised in Cherry Hill by offsite advertising signs. And in the absence of such proof, the court will not accept the legal conclusions reached in other cases as substitute for evidence in this case that a complete ban of billboards directly advances the interest in traffic safety. The Zoning Ordinance

does outline the purpose for its ban; however, these conclusive statements do not constitute satisfactory evidentiary justifications.

The Township also recognized the need to support its regulatory scheme with sufficient factual basis. In an effort to do so, the Zoning Board included a Preamble to the Ordinance, which cites a 2003 U.S. Sign Council (USSC) report entitled, "On-Premise Signs Guideline Standards."[3] That report provides best practice standards and "affords designers and regulators of signs with an insight into the legibility, size, and placement characteristics necessary for effective roadside communication to occur." However, as its title indicates, this study analyzes the effect of *onsite signs* on traffic safety and does not provide any insight or recommendations regarding the detrimental effects of *offsite* billboards.[4] No other study or expert opinion is referenced in the Ordinance or in the Defendants' papers supporting the Board's rationale that a complete ban is warranted.

In <u>Renton v. Playtime Theaters, Inc.</u>, the Supreme Court stated that a municipality may rely on evidence that is not in reference to that specific locality. 475 U.S. 41 (1986). <u>Renton</u> involved a constitutional challenge to a zoning ordinance that prohibited adult motion picture theaters from locating within 1,000 feet of any

---

[3] The Preamble provides: "Research by the United States Sign Council and others has shown that complex environments for driving tasks reduce the time for a driver to detect and read a sign and results in the need for more conspicuous and larger signs if the appropriate regulations of the size, number and location of signs are not adopted."

[4] The Defendants did not provide the court with a copy of this study nor did the Defendants reference the USSC's conclusions or recommendations within its motion for partial summary judgment. Plaintiff provided a copy of the "Guideline Code for Regulation of On-Premise Signs" prepared in 2001 by the USSC. (Pl. Ex. A.) The court located and reviewed the 2003 study referenced in the regulation. The court's concern is that the Plaintiff's expert was provided with a USSC report dated 2001 to review, but the study referenced in the ordinance is dated 2003.

residential zone, single or multiple-family dwelling, church, park or school.  The Ninth Circuit Court of Appeals held that because the Renton ordinance was enacted without the benefit of studies specifically relating to "the particular problems or needs of Renton," the city's justifications for the ordinance were "conclusory and speculative." 748 F.2d 527, 537 (9th Cir. 1984).  However, upon review the Supreme Court stated, "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."  475 U.S. at 51-51.

While the subject matter in Renton and legal analysis conducted by the Renton Court are distinguishable from the case before this court, Renton supports the conclusion that while parties may rely on evidence previously generated, only evidence that is relevant to the circumstances at hand is admissible to support a municipalities' stated interests.  Here, Cherry Hill may not support its Zoning Ordinance with a study that has no application to offsite advertising.  That study highlights the unique issues presented by onsite advertising stating, "[b]y virtue of their diversity and placement on private property, on-premise signs exist as a totally separate class of motorist-oriented communication, encompassing unique design challenges and traffic safety implications." The township has not submitted other evidence upon which it relied when drafting the ordinance.  In the absence of such information, the court cannot confidently review the connection between traffic safety and a total ban of billboards.

The court also finds that the Township has failed to show that its asserted interest in aesthetics is sufficiently substantial in the industrial areas of Cherry Hill.  While a

10

township has the right to determine that the community should be beautiful, See Berman v. Parker, 348 U.S. 26, 33 (1954), there are "problems in and limits to aesthetic zoning, particularly when it conflicts with beauty of a different sort -- free speech." Elray Outdoor Corp. v. Board of Adjustment of City of Englewood, 2009 WL 2851018 at *7 (N.J. Super. Ct. App. Div. September 08, 2009) (citing State v. Miller, 83 N.J. 402, 411, 416 A.2d 821 (1980)). A municipality cannot simply assert the importance of aesthetics and ignore First Amendment protections in the name of beautification. It is no doubt true that the appearance of the Township would be improved by limiting outdoor advertising displays; however, it is not as immediately apparent that forbidding them in *all* zones in Cherry Hill would have an effect on the aesthetic quality of the Township. Furthermore, the Township's commitment to beautification is weakened when the zoning ordinance excepts onsite signs and bus shelter advertisements from the ban.

It is not the court's intention to impose its aesthetic preferences on Cherry Hill. However, before according deference to the Township's judgment, the court must be convinced that the Township has some rationale supporting its decision to implement a total ban across all zones of Cherry Hill of only offsite billboards. That judgment may be legitimate; however in the absence of any evidence on the record it is difficult to conclude that the judgment is justified.

The city in Metromedia likewise permitted onsite signs but prohibited offsite signs. That Court stated that "esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." Id. at 510. There,

the plurality accepted the City's decision to value one kind of commercial speech (onsite advertising) over another (offsite advertising).  Similar deference may be warranted here, but may only be accorded after careful scrutiny of the aesthetic judgments made by Cherry Hill.  Without any evidence regarding the basis for those judgments, the court cannot diligently review the Township's reasoning.

### IV.  Conclusion

Cherry Hill's Zoning Ordinance clearly outlines the purposes for its ban on offsite advertising displays; however, conclusive statements alone do not constitute satisfactory evidentiary justifications.  Defendants may not simply state as a matter of fact that the Zoning Ordinance directly advances government interests in traffic safety and aesthetics without providing any evidence regarding whether the Township considered less restrictive means or made a particularized inquiry regarding the ban and the areas upon which it would apply.  The motion for summary judgment is premature and for that reason,

IT IS ORDERED on this 7th day of December, 2009, that Plaintiff's request for a continuance pursuant to Fed. R. Civ. P. 56 (f) is GRANTED; and

Defendants' Motion for Partial Summary Judgment [Doc. No. 11]  is administratively terminated pending the completion of discovery.

/s/ Joseph H. Rodriguez

HON. JOSEPH H. RODRIGUEZ,
United States District Judge