NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
INTERSTATE OUTDOOR
ADVERTISING                                       :

      Plaintiff,                                 :       Hon. Joseph H. Rodriguez

      v.                                         :       Civil Action No. 08-3753

ZONING BOARD OF THE TOWNSHIP     :
OF CHERRY HILL AND THE                              **OPINION**
TOWNSHIP OF CHERRY HILL,         :

      Defendants.                                 :
_____

**RODRIGUEZ**, Senior District Judge:

This matter comes before the Court on Motion for Partial Summary Judgment [Dkt. No. 43] filed by Defendants Township of Cherry Hill ("Cherry Hill") and Township of Cherry Hill Zoning Board of Adjustment ("Zoning Board")(collectively "Defendants").[1] Plaintiff Interstate Outdoor Advertising ("Interstate") was denied permits to erect offsite outdoor advertising displays ("billboards") in Cherry Hill by the Zoning Board based on failure to comply with various provisions of the township's zoning ordinance ("Zoning Ordinance"). At issue is whether Cherry Hill's Zoning

---

[1] Defendants previously filed a motion for partial summary judgment [Dkt. No. 11] on March 27, 2009. Interstate argued that the motion was premature due to the then undeveloped record and requested additional discovery pursuant to Fed. R. Civ. P. 56(f). Following oral argument, the Court administratively terminated the motion on December 7, 2009 pending completion of discovery [Dkt. No. 23].
    In the mean time, Cherry Hill amended its Zoning Ordinance in November of 2010. Interstate filed an Amended Complaint on December 13, 2010, alleging that the amended ordinance remains in violation of the First and Fourteenth Amendments, as well as New Jersey law. Defendants renewed their motion for summary judgment on December 21, 2010.

Ordinance restricting off site signs and billboards violates the First and Fourteenth Amendments and whether Plaintiff's have standing to bring the present action.

The Court has considered the written submissions of the parties, as well as the arguments advanced during the two hearings in this case on November 23, 2009 and July 19, 2011. For the reasons expressed below, Defendants' motion will be granted as to the First and Fourteenth Amendment claims because Interstate lacks standing to challenge the alleged constitutional violations. The Amended Complaint will be dismissed for lack of subject matter jurisdiction.

## I.  Background & Procedural History

### A.  The Parties

Interstate is a company engaged in the business of erecting and leasing outdoor advertising structures in a variety of markets, including the township of Cherry Hill, New Jersey. (Def. SMF, ¶ 1.) Cherry Hill's Zoning Board is a land use board that operates pursuant to the New Jersey Municipal Land Use Law ("MLUL"), N.J. Stat. Ann. 40:55D-1, et seq. (Id. at ¶ 2.) In 2007, Interstate filed three permit applications with the Zoning Board, seeking to erect four double-sided billboards in various locations in Cherry Hill's Restricted Industrial ("I-R") Zone along U.S. Interstate- 295 (a major transportation corridor with three lanes of traffic in each direction).[2] (Id. at ¶ 5.) Each proposed billboard has face dimensions of forty-eight feet by fourteen feet and total heights ranging from approximately eighty-two feet to ninety-five feet. (Id. at ¶¶ 6-7.)

---

[2]  Interstate seeks to erect one sign at 605 Chapel Avenue, Block 465.01, Lot 13 (Chapel Ave. Sign"); one sign at 600 Deer Road, Block 467.20, Lot 11 ("Deer Rd. Sign"); and two signs at 1403 Berlin Road, Block 431.17, Lot 3 ("Berlin Rd. Signs").

### B. Article XXIII & Interstate's Requests for Variances

At the time Interstate filed its permit applications, the regulation of signs within all zones was governed by Article XXIII of Cherry Hill's Zoning Ordinance. (Id. at ¶ 9.) Article XXIII prohibited all offsite signs, defined as "any sign located on a lot other than the lot occupied by the use, event or product which said sign identifies." (Id.) Article XXIII also contained various regulations limiting sign height, area, spacing, mounting requirements, and setback distances for all signs. (Id. at ¶¶ 13-14.)

Each of Interstate's proposed signs required numerous variances from Article XXIII's sign regulations. Interstate sought "use variances" under N.J.S.A. 40:55D-70(d) for relief from the prohibition against offsite signs and from the prohibition against any structure greater than thirty-five feet in height in the I-R Zone. (Id. at ¶ 12.) In addition, Interstate sought "bulk variances" under N.J.S.A. 40:55D-70(c) to permit deviation from the general sign area, height, spacing, and setback regulations, among others. (Id. at ¶¶ 13-15.) The Zoning Board held public hearings on the applications in April and June of 2008, at which time Interstate presented fact and expert witnesses in support of the requested variance relief. (Id. at ¶ 16.)

### C. Ordinance 2008-6

While Interstate's applications were pending before the Zoning Board, Cherry Hill adopted an ordinance amending Article XXIII in March of 2008 ("Ordinance 2008-6"), with the purpose of clarifying its ban of offsite signs and billboards. (Id. at ¶ 18.) The ordinance was accompanied by an extensive list of reasons and justifications in support of the ban; namely the promotion of traffic safety by eliminating distractions

3

and the preservation of the aesthetic beauty and essential character of the township. (Def.'s Br., Moore Aff., Ex. E., "Ordinance 2008-6.")

The newly amended Article XXIII explicitly states that "[t]he purpose of a sign within the Township of Cherry Hill shall be to identify an establishment, not to advertise. Identification signs allow the principal name of the establishment or proprietor and a brief description of the principal goods or service offered." (Ordinance 2008-6, § 2301. SCOPE & APPLICATION.) Article XXIII was further amended to provide that: "Off-Site signs and Billboards are prohibited in all zones." (Id., § 2303.4.f. GENERAL REGULATIONS.) In addition, Article V, Section 511 of the Zoning Ordinance was amended to reaffirm that offsite signs and billboards, such as those erected and leased by Interstate, were prohibited in all zones:

> The below listed structures and uses are prohibited in any zone . . .
>     5. Billboards and Off-site signs.
> All uses not specifically permitted in this Ordinance are hereby prohibited.

(Id., § 511. PROHIBITED STRUCTURES AND USES.)

Article XXIII defines billboards as "a sign structure and/or sign utilized for advertising an establishment, an activity, a product, service or entertainment, which is sold, produced, manufactured, available or furnished at a place other than on the property on which said sign structure and or sign is located," and offsite signs as "any sign located on a lot other than the lot occupied by the use, event or product, which said sign identifies." (Id., §§ 2302.3, 2303.23.) However, Article XXIII also provides that

4

"bus shelters as expressly provided by Township Council by contract or Ordinance" are excepted from the definition of offsite signs.

### D.  Original Complaint & First Motion for Summary Judgment

The Zoning Board ultimately denied each of Interstate's applications based on the restrictions contained in the Zoning Ordinance, as amended by Ordinance 2008-6, and as memorialized in detailed resolutions adopted by the Zoning Board in June and July of 2008.  (Id. at ¶¶ 17-18.)  Interstate thereafter filed three complaints in this court, challenging each of the Zoning Board's denials and alleging that Article XXIII violates the First and Fourteenth Amendment and various state laws.[2]  The three actions were consolidated on December 4, 2008 and Defendants filed a motion for summary judgment in March of 2009, seeking judgment in their favor as to the constitutional claims and dismissal of the pendant state law claims.  Interstate argued that Defendants failed to present sufficient evidence to establish the necessary connection between the complete ban of offsite advertising and the promotion of traffic safety and aesthetics and requested additional discovery pursuant to Rule 56(f).

This court recognized that in Metromedia, Inc. v. City of San Diego, 453 U.S. 508-10 (1981), the Supreme Court expressed a willingness to accord broad deference to legislative judgment imposing restrictions on commercial speech when those restrictions seek to further substantial governmental interests in safety and aesthetics.  See Interstate Outdoor Advertising v. Zoning Board of the Tp. of Cherry Hill, 672 F.

---

[2]   Interstate challenges the denial of the Berlin Rd. Signs application in Civ. No. 08-3753; the denial of the Deer Rd. Sign application in Civ. No. 08-4758; and the denial of the Chapel Ave. Sign in Civ. No. 08-4757.

Supp. 2d 675, 678 (D.N.J. 2009).  However, the court stressed that when the legislature seeks to restrict free speech, conclusive statements alone cannot support the decision that an ordinance actually addresses the professed safety and aesthetic concerns.  See id. at 679-81.  Although Cherry Hill's interest in safety and aesthetics may be substantial in the abstract, it does not mean that a wholesale ban on all billboards and offsite sign necessarily serves that interest.  See Edenfield v. Fane, 507 U.S. 761, 770 (1993).  Thus, the court guided by the Metromedia Court's direction must undertake a particularized inquiry into the nature of the conflicting First Amendment interest at stake and the validity of the public interest allegedly served by the regulation.  See Interstate, 672 F. Supp. 2d at 678 (citing Metromedia, 453 U.S. at 503).  Without any relevant evidence regarding the basis for the complete ban of offsite signs and billboard, a diligent review of Cherry Hill's reasoning was impossible at that time.  As a result, the motion was administratively terminated pending the completion of discovery.

    **E.  Ordinance 2010-28**

In November of 2010, Cherry Hill adopted Ordinance 2010-28, which further amended Article XXIII.  (Moore Aff., Ex. S, "Ordinance 2010-28.")  The new ordinance significantly expanded Article XXIII's Statement of Purpose with a fourteen-point clarification of the aims sought to be furthered by the sign regulation:

> A. . . . the purpose of this Article is to promote the public health, safety, and general welfare through reasonable, consistent, and non-discriminatory sign standards.  The sign regulations in this Article are not intended to censor speech or to regulate viewpoints, but instead are intended to regulate the secondary effects of speech, and, especially, insofar as those secondary effects may adversely affect aesthetics and traffic and pedestrian safety.  In order to preserve and enhance the Township as a desirable community in

which to live and do business, a pleasing, visually attractive environment is of foremost importance.  The regulation of signs within the Township is a highly contributive means by which to achieve this desired end.  These sign regulations have been prepared with the intent of enhancing the visual environment of the Township and promoting its continued well-being, and are intended to:

1. To promote the free flow of traffic and protect pedestrians, bicyclists and motorists from injury and property damage caused by, or which may be fully or partially attributable to cluttered distracting, or illegible signs.
2. To promote the use of signs that are aesthetically pleasing and of appropriate scale to the building(s) they relate to.
3. To promote the use of signs that are integrated with the surrounding buildings and landscape.
4. To promote the use of signs that are compatible with the Township's historic character.
5. To provide functional flexibility, encourage variety, and create an incentive to relate signage to basic principles of good design.
6. Lessen the visual clutter that may otherwise be caused by the proliferation, improper placement, illumination, animation excessive height, and excessive size (area) of signs which compete for the attention of pedestrian and vehicular traffic.
7. Allow signs that are compatible with their surroundings and aid orientation, while precluding the placement of signs that contribute to sign clutter or that conceal or obstruct adjacent land uses or signs.
8. Encourage and allow signs that are appropriate to the zoning district in which they are located and consistent with the category of use and function to which they pertain.
9. Categorize signs based upon the function that they serve and tailor the regulation of signs based upon their function.
10. Preclude signs from conflicting with the principal permitted use of the site and adjoining sites.
11. Preserve, conserve, protect, and enhance the aesthetic quality and scenic beauty of all districts of the Township.
12. Protect property values by precluding to the maximum extent possible sign-types that create a nuisance to the occupancy or use of other properties as a result of their size, height, illumination, brightness, or movement.
13. Protect property values by ensuring that sign-types, as well as the number of signs, are in harmony with buildings, neighborhoods, and conforming signs in the area.
14. Preserve and enhance the residential and historic character of

the Township.

(Ordinance 2010-28, § 2301, PURPOSE, INTENT & SCOPE.) Beyond this elaboration, Ordinance 2010-28 primarily reorganizes the section and sub-section structure of Article XXIII and does not significantly change the substance of the provisions contained therein. Offsite signs and billboards are still prohibited in all zones. The bulk restrictions applicable to onsite signs in the I-R Zone remain unchanged. The general regulations on sign area, height, and setback in all zones, and the exception for bus shelters from the offsite ban also remain in effect.

### F. Amended Complaint & Renewed Motion for Summary Judgment

Plaintiffs filed an Amended Complaint on December 13, 2010, alleging that Article XXIII's billboard ban, and the Zoning Ordinance in general, remained unconstitutional and in violation of New Jersey law. The Amended Complaints alleges eight counts seeking damages and injunctive relief. The first three counts allege violations of the First and Fourteenth Amendments. Count One alleges that Article XXIII, and the Zoning Ordinance in general, violate the right to free speech under the First Amendment. (Am. Compl., ¶¶ 23-37.) Count Two alleges that Article XXIII's prohibition of offsite signs and billboards violates Interstate's equal protection rights because the prohibition is not rationally related to a compelling state interest. (Id. at ¶¶ 38-42.) Count Three alleges that Cherry Hill's exception for advertisements placed on bus shelters likewise violates Interstate's rights to free speech and equal protection under the constitution. (Id. at ¶¶ 43-51.)

The remaining claims seek relief under the New Jersey Constitution and various state law.  Count Four alleges that Cherry Hill's decision to permit offsite advertising on bus shelters on township property while prohibiting off-site advertising on private property violates New Jersey's "Square Corners Doctrine."  (Id. at ¶¶ 52-57.)  Count Five alleges unspecified violations of the New Jersey Constitution.  (Id. at ¶¶ 58-63.)  Counts Six, Seven and Eight allege various prerogative writs claims under New Jersey Municipal Land Use Law on the grounds that the Zoning Board's denial of Interstate's variances was arbitrary, capricious, and unreasonable.  (Id. at ¶¶ 64-69, 70-74, 75-82.)  Defendants now renew their Motion for Partial Summary Judgment as to the constitutional claims, challenging Interstate's standing and the merits of these claims.

## II.  Jurisdiction

Interstate invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331, because it alleges violations under the First and Fourteenth Amendment.  These claims are brought through the vehicle of 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  Supplemental jurisdiction over Interstate's state law claims is pursuant to 28 U.S.C. § 1367(a).

## III.  Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d

471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon

mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### IV. Discussion

Defendants first argue that Interstate lacks standing to challenge the constitutionality of Cherry Hills ban of billboards and offsite signs. According to Defendants, Interstate is unable to demonstrate a redressable injury because the permit applications could be denied by constitutionally valid provisions of the Zoning Ordinance. Next, Defendants argue that even if Interstate has standing, the Zoning Cherry Hill's prohibition against billboards is constitutional because it furthers

legitimate interests in safety and aesthetics and is supported by a reasonable factual basis that the ban directly furthers those objectives.

### A. Standing

The Court must first address Interstate's standing before reaching the merits of the constitutional claims.[1]  See Lujan v Defenders of Wildlife, 504 U.S. 555 (1992). Standing is a threshold jurisdictional requirement, derived from the "case and controversy" language of Article III of the Constitution that embraces both constitutional and judicially self-imposed prudential limitations on who may invoke the power of the federal courts.  U.S. CONST. art III, § 2, cl. 1; See Allen v. Wright, 468 U.S. 737, 751 (1984); Pennsylvania Prison Soc. v. Cortes, 508 F.3d 156, 158 (3d Cir. 2007) ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention") (quoting Warth v. Seldin, 422 U.S. 490 (1975)).  Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.  Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).[2]

---

[1]  The Supreme Court has stated that "standing is not dispensed in gross." Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996).  Thus, a plaintiff must separately demonstrate standing "for each claim he seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).  However, where multiple claims challenge the same conduct and allege the same injuries, a claim-by-claim analysis is unnecessary.  Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 139 n.5 (3d Cir. 2009).  Thus, Interstate's First Amendment and Equal Protection claims are properly treated together because they challenge the same conduct and seek the same relief.  See See Coastal Outdoor Advertising Group, L.L.C. v. Township of Union, 676 F. Supp. 2d 337, 345 (D.N.J. 2009).

[2]  A federal court has an independent obligation to examine its own jurisdiction, therefore, if the parties fail to raise the issue of standing, it may be addressed by the Court *sua sponte* at any stage of the proceedings.  See FW/PBS, Inc. v. City of Dallas,

A plaintiff seeking to invoke federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the matter and degree of evidence required at successive stages of the litigation." FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996) (quoting Lujan, 504 U.S. at 561).  On summary judgment, "'the plaintiff cannot rely on mere allegations but must set forth by affidavit or other evidence specific facts' demonstrating that these requirements have been met." Freeman v. Corzine, 629 F.3d 146, 152 (3d Cir. 2010) (quoting Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 175 (3d Cir. 2001)) (internal quotation marks and citation omitted); Day v. Bond, 500 F.3d 1127, 1132 (10th Cir. 2007) (noting that a defendant should prevail on standing grounds if "the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing.")

To satisfy the "irreducible constitutional minimum" requirements of standing, a plaintiff must demonstrate the existence of (1) an injury in fact; (2) a causal connection between the injury and the conduct; and (3) a substantial likelihood the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137-38 (3d Cir. 2009).  The Third Circuit has held that "[r]edressability is not a demand for mathematical certainty.  It is sufficient for the plaintiff to establish a substantial likelihood that the requested relief will remedy the alleged injury of fact." Toll Brothers, 555 F.3d at 143.

---

493 U.S. 215, 230-31 (1990)).

Two recent District of New Jersey decisions analyzing constitutional challenges to billboard bans held that a plaintiff is unable to establish the essential requirement of redressability, even if the challenged provision was struck down, if other unchallenged provisions would independently prevent construction of the desired billboards. See Coastal Outdoor Advert. Gp., LLC v. Twp. of Union, 676 F. Supp. 2d 337, 349 (D.N.J. 2009) (Wolfson, J.), aff'd, 402 F. App'x 690, 691 (3d Cir. Nov. 18, 2010); Coastal Outdoor Advert. Gp., LLC v. Twp. of East Hanover, 630 F. Supp. 2d 446, 454 (D.N.J. 2009) (Hayden, J.), aff'd, 397 F. App'x 794, 795 (3d Cir. Nov. 16, 2010). In affirming the reasoning of the District Court, the Third Circuit held that this redressability analysis comported with the Circuit's Toll Brothers precedent and the decisions of numerous other circuit courts. See Union, 402 F. App'x at 691 (finding that "the District court correctly held that Coastal did not demonstrate redressability because unchallenged restrictions, including those on the height and size of signs, would prohibit their erection even if we were to invalidate the provision banning billboards"); East Hanover, 397 F. App'x at 795 (finding that "the district court correctly concluded that even if the Township's superseded prohibition on billboards were unconstitutional, Coastal would not be 'substantially likely' to erect the billboard because the unchallenged setback, use, and height restrictions would still prevent Coastal from erecting its billboards").[1] Thus,

---

[1] See also, e.g., Covenant Media of South Carolina, LLC v. City of North Charleston, 493 F.3d 421, 430 (4th Cir. 2007) ("Because Covenant's application violated the spacing requirement, it could not have been approved regardless of whether other substantive provisions of the Sign Regulation are held to be unconstitutional."); Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio, 503 F.3d 456, 461 (6th Cir. 2007) ("[E]ven if . . . our court invalidated [the offsite sign ban], that would not redress plaintiffs' injury because the size and height restrictions still would preclude the township from approving their sign applications and thus still would preclude plaintiffs from erecting each of these signs."); N. Ave. Novelties, Inc. v. City of Chicago, 88 F.3d 441, 444 (7th

to raise a justiciable issue, Interstate's constitutional challenge must meaningfully address each of the provisions that bar the proposed billboards.

Interstate argues that it has challenged every prohibition cited by the Zoning Board in that it challenges the constitutionality of the Zoning Ordinance as a whole. According to Interstate, these prohibitions cannot be read independently because, as applied to billboards, "they act in concert to prohibit constitutionally protected free speech." (Pl.'s Opp. Br., p. 3.) Interstate supports this conclusion by arguing that "the alleged 'neutral' bulk requirements may be 'neutral' when regulating the permitted on site identification signs for which they were designed but are necessarily tainted by and inextricably bound to the billboard ban when applied to outdoor advertising." (Id. at p. 22.)

---

Cir. 1996) (holding that plaintiff adult bookstore had standing because it challenged all provisions of the zoning code that could preclude its operation);Harp Adver. Ill., Inc. v. Vill. of Chicago Ridge, Ill., 9 F.3d 1290, 1292 (7th Cir. 1993) (holding that plaintiff advertiser's inability to erect billboard would not be redressed by favorable decision because an unchallenged provision of sign code would block construction); Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 801 (8th Cir. 2006) ("[A] favorable decision for Advantage even with respect to those sign code provisions which were factors in the denial of its permit applications would not allow it to build its proposed signs, for these would still violate other unchallenged provisions of the sign code like the restrictions on size, height, location, and setback."); Get Outdoors II, LLC v. City of San Diego, 506 F.3d 886, 892 (9th Cir. 2007) (upholding standing where plaintiff challenged all provisions in the city's sign ordinance that formed the basis of plaintiff's permit denial); Maverick Media Group, Inc. v. Hillsborough County, Fla., 528 F.3d 817, 821 (11th Cir.2008) (holding that a sign permit applicant lacks a redressable injury to challenge the constitutionality of a sign ordinance where the permit could have been denied on the basis of some alternative but unchallenged regulation); KH Outdoor, L.L.C. v. Clay County, 482 F.3d 1299, 1303 (11th Cir. 2007) ( "Any injury KH Outdoor actually suffered from the billboard and offsite sign prohibition is not redressible because the applications failed to meet the requirements of other statutes and regulations not challenged.").

15

Interstate's argument that it challenges the specific sign size, height, and setback provisions relevant to its permit denials simply by alleging that it challenges the entirety of the Zoning Ordinance is without merit. See, e.g. Covenant Media, 493 F.3d at 429 (holding that a billboard company's standing to challenge one provision of a sign ordinance "does not provide it with a passport to explore the constitutionality of every provision of the [ordinance]"); Get Outdoors II, 506 F.3d at 892 ("Get Outdoors II cannot leverage its injuries under certain, specific provisions to state an injury under the sign ordinance generally").  At the summary judgment stage Interstate must do more than allege; it must meaningfully challenge each provision that bars construction of the billboards in question to satisfy the redressability requirement.  See Union, 676 F. Supp. 2d at 350 n.14 (noting that plaintiff did not challenge each of the suspect provisions because it did not even *attempt* to analyze them under the appropriate Supreme Court and Third Circuit precedent).  Here, Interstate's legal conclusion that all provisions of the Zoning Ordinance are necessarily intertwined does not create a genuine issue of fact as to the specific bulk restriction provisions' constitutionality.  Further, Interstate fails to make a showing sufficient to establish the existence of a redressable injury because it does not attempt to respond to Defendants' particularized arguments regarding the constitutionality of the applicable sign size, height, and setback provisions.[6]

---

[6] Defendants argue that because Cherry Hill's bulk regulations are constitutional, Interstate lacks standing to challenge the billboard specific ban.  However, importantly, Interstate's standing does not rely on the *merits* of the constitutional validity of any provision that prohibits the proposed billboards.  Rather, Interstate's lack of standing turns on its failure to meaningfully *challenge* each of those prohibitory provisions.

Even if the Court was to accept Interstate's argument that it has challenged, if only vaguely and implicitly, the provisions of the ordinance that implicate the unique characteristics of typical commercial billboards, it would still fail to raise a justiciable issue.  In addition to rejecting Interstate's permit applications based on sign size, height, and setback requirements, the Zoning Board also rejected Interstate's applications because they were in violation of the Zoning Ordinance's limitation on the number of signs permitted on the proposed locations.[1]  Interstate fails to reference this limitation in either the Amended Complaint or its moving papers, nor does it raise *any* argument why this provision is innately intertwined with the prohibition against offsite signs and billboards or otherwise constitutionally deficient.  Therefore, it has not challenged this provision of the Zoning Ordinance and summary judgment is appropriate.  See id. at 340 (citing cases "granting summary judgment where plaintiff failed to respond in its opposition brief with an argument adequately articulating the factual and legal basis in support of its position").[2]

---

[1]  Specifically, each of Interstate's proposed billboards violated Cherry Hill's prohibition against freestanding signs on lots with a frontage of less than fifty (50') feet. (See Moore Aff., Exs. F-H.)  Section 2303.2.c of Article XXIII under Ordinance 2008-6 and Section of 2303.B.1 of Article XXIII as currently amended by Ordinance 2010-28 both provide that: "A property line with a frontage of less than fifty (50') feet shall not be permitted a freestanding sign."  (See Moore Aff., Exs. E, S.)  In addition, without listing all of the various ordinance provisions cited by the Zoning Board to deny Interstate's applications, the Court briefly notes by way of further illustration that the Chapel Ave. Sign was also denied pursuant to Section 2206 of the Zoning Ordinance which prohibits development in a flood hazard area.  (Ex. F.)

[2]  Interstate also contends that its injury is redressable because even if it cannot meet all of the strictures of the bulk sign regulations not specifically challenged, it has the ability to seek variance relief under the mechanisms and procedures set in place by New Jersey's Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq.  (Pl.'s Opp. Br., pp. 3, 24-25.)  According to Interstate:

Even if the court were to strike down each of the challenged provisions, Interstate's permits would still be denied on the basis of other, unchallenged, provisions of the Zoning Ordinance. Thus, Interstate does not have standing because it has not demonstrated "a substantial likelihood that the requested relief will remedy the alleged injury in fact." Toll Bros, Inc., 555 F.3d at 143. Because the court does not have subject matter jurisdiction to address these claims, they must be dismissed. See Taliaferro, 458 F.3d at 188. Defendants' motion for summary judgment will be granted as to the constitutional claims.[1] Therefore, Counts One, Two, and Three of the Amended

> To follow the Defendants' logic on standing, one would have to conclude that *any and every* non-confirming [sic] structure is absolutely barred and prohibited in New Jersey. Therefore, be it a residence in need of a variance for a deck, a shopping center in need of a minor setback variance for a deck, a shopping center in need of a minor setback variance, or a church in need of a parking variance for its congregants, no use could ever receive relief from a bulk condition with which it did not strictly comply. This is expressly not the case under the MLUL. To the contrary, the MLUL makes it abundantly clear that bulk requirements are not absolutes [sic] bars to development or the operations of a permitted use even if that use fails to completely conform to those requirements.

(Id. at p. 25.) Interstate's argument misses the mark by conflating the minimum requirements necessary to invoke the authority of the federal courts to hear a constitutional challenge to an ordinance with the standard to seek variance relief from the requirement under New Jersey's MLUL. This court's inability to adjudicate Interstate's constitutional challenge in no way deprives Interstate from seeking relief under the appropriate standards articulated in the State's MLUL.

[1] Because the court is without jurisdiction to enter a judgment on the constitutional claims and any opinion would be merely advisory, it does not address the merits of these claims. See In re Orthopedic "Bone Screw" Products Liability Litigation, 132 F.3d 152, 155 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It has no authority to do so.") The question of whether or not a township can foreclose all speech through this venerable medium of expression by simply reciting the words "safety and aesthetics" requires a particularized inquiry to ensure that First Amendment protections are not being eroded by conclusive justifications unsupported by any factual basis. However, the court is

Complaint will be dismissed for lack of standing.[1]

### B. State Law Claims

The remaining claims are based solely on New Jersey law.[2] District courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Further, "the Third Circuit has held that, where all federal claims are dismissed before trial, 'the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Union, 676 F. Supp. 2d at 352 (quoting Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). Because the parties have not given the court reason to exercise jurisdiction over the remaining state law claims, they are dismissed without prejudice to Interstate's ability to re-file in the appropriate forum.

---

without authority to resolve that question in this case.

[1]     Because Interstate's claims are dismissed for lack of standing, and therefore, on jurisdictional grounds, they are dismissed without prejudice to its ability to re-file in a court of competent jurisdiction. See "Bone Screw" Litigation, 132 F.3d at 155-56; Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir. 1987) (holding that "a ruling granting a motion to dismiss for lack of subject matter jurisdiction is not on the merits; its res judicata effect is limited to the question of jurisdiction.")

[2]     The Fourth Count alleges that Cherry Hill's decision to permit offsite advertising on township bus shelters while prohibiting offsite advertising on private property violates New Jersey's "Square Corners" doctrine. (Am. Compl., ¶¶ 52-57.) The Fifth Count alleges unspecified violations of the New Jersey Constitution. (Id. at ¶¶ 58-63.) The Sixth, Seventh, and Eighth Counts allege various prerogative writs claims under New Jersey's municipal land use law. (Id. at ¶¶ 64-69, 70-74, 75-82.)

### C. Interstate's Request for Damages

Interstate argues that "even if the Court finds for the Defendants, Interstate would still be entitled to a determination that it is the prevailing party in this suit and should receive damages, or at least the same would be a remaining question for adjudication." (Pl.'s Opp. Br., p. 4.) However, for the same reasons the court is precluded from deciding the merits of the constitutional challenge, it is without authority to entertain Interstate's request for damages. See Taliaferro, 458 F.3d at 188; "Bone Screw" Litigation, 132 F.3d at 155-56.

## V. Conclusion

For the reasons stated above, Defendants' motion will be granted. Interstate lacks standing to bring its constitutional challenges in this court. Therefore, these claims are dismissed for lack of jurisdiction. Because the court does not have original jurisdiction over the remaining claims, they too are dismissed on jurisdictional grounds. An appropriate order shall issue.

Dated: September 13, 2011

    /s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
United States District Judge